IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RICHARD HENRY BRASHIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-00377-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Richard Brashier seeks review of the Administrative Law Judge ("ALJ")'s decision denying his application for disability insurance and supplemental security income benefits. [Doc. # 1]. For the reasons set forth below, the decision of the ALJ is AFFIRMED.

**I.     Background**

The primary issue in dispute in this case is whether the ALJ gave appropriate weight to the opinion of Brashier's treating cardiologist, Dr. Darcy Conaway. Brashier began seeing Dr. Conaway on March 30, 2010, for cardiac consultations following a heart attack he suffered on August 6, 2009. Brashier had also been hospitalized overnight in January of 2010 after going to the emergency room for shortness of breath, which Dr. Conaway indicated was likely exacerbated by large alcohol intake over Christmas. During the visit on March 30, 2010, Brashier reported walking one to two miles per day

1

without angina or shortness of breath.  An echocardiogram from that time revealed an estimated ejection fraction of thirty-five percent.

Barshier saw Dr. Conaway five times between March 30, 2010 and December 13, 2011.  Subsequent echocardiograms revealed severely decreased left ventricular function with an estimated ejection fraction of twenty percent.  During this time, Brashier reported occasionally drinking, smoking, and working, with his stated alcohol use varying from once every few weeks to half a pint of alcohol daily.  Dr. Conaway repeatedly advised Brashier to quit smoking and drinking, stressing that Brashier needed to quit drinking to see if his heart muscle improved before having an ICD inserted to protect him from fatal arrhythmia.  On December 13, 2011, Brashier told Dr. Conaway that he had stopped drinking and Dr. Conaway ordered another echocardiogram without the presence of alcohol to see if Brashier's ejection fraction improved.

That same day, Dr. Conaway encouraged Brashier to apply for disability.  Dr. Conaway wrote that he believed Brashier was not capable of performing the manual labor jobs he had worked in the past, or any job with high exertion levels or that requires lifting more than ten pounds.  She indicated that Brashier was limited to sedentary jobs at that time, which could be reevaluated if his ejection fraction improved.

Dr. Conaway completed a Medical Source Statement Physical on January 10, 2012. Dr. Conaway wrote that Brashier's weak heart muscle will not tolerate heavy exertion and limited Brasher to occasionally lifting and carrying no more than ten pounds.  Dr. Conaway further indicated that Brashier can stand, walk, sit, and push/pull as tolerated and occasionally perform postural activities, with the exception that he can

never climb. Dr. Conaway concluded that Brashier is unable to perform these activities eight hours per day in a competitive work setting with no more than one day's absence per month.

During the administrative hearing, Brashier testified that he lived alone and supported himself with food stamps, temporary jobs he worked once or twice a week for about six months at a time, and money from his family. He had also received unemployment benefits from approximately September of 2009 to December of 2010. The temporary jobs he had worked included cutting grass, moving mattresses, and removing insulation from warehouse walls. Brashier also testified that he was regularly looking for work and that the only reason he was not working was that he had not been able to find a steady job. Brashier estimated that he could walk up to two miles at a time, stand for thirty minutes at a time, and lift up to twenty pounds. Brashier testified that he prepares his own meals, cleans his apartment, and rides the bus every day. He takes the bus to do his laundry at a location about a mile and a half from his home. He also takes the bus to the store, though sometimes he walks or gets a ride from his sister. For recreation, Brashier stated that he jogs and runs, plays basketball and throws the football.

The ALJ concluded that Brashier retained the ability to perform light work as defined in the regulations,[1] except that he can only occasionally climb ramps or stairs,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567

balance, stoop, or crouch; never climb ladders, ropes or scaffolds; frequently kneel or crawl; and must avoid concentrated exposure to pulmonary irritants, hazardous conditions, unprotected heights and hazardous machinery. The ALJ acknowledged Dr. Conaway's more restrictive opinion, but afforded it little weight because it was inconsistent with the treatment records and Brashier's testimony.

## II.   Discussion

The Court will affirm the ALJ's decision denying benefits if it is supported by substantial evidence in the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). The Court must consider the evidence that supports the decision as well as the evidence that detracts from it. *Finch*, 547 F.3d at 935. An administrative decision will not be reversed, however, simply because the Court might have reached a different conclusion. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). If, after reviewing the evidence, it is possible to reach two inconsistent positions and one of those positions represents the ALJ's findings, the Court must affirm the decision. *Id*.

Brashier argues that the ALJ erred by rejecting Dr. Conaway' opinion that Brashier is limited to sedentary work, which would have compelled a finding of disability under the medical vocational guidelines due to Brashier's age. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the

4

record.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013).  Nonetheless, an ALJ may discount or disregard a treating physician's opinion where it is inconsistent with other substantial evidence in the record, including the claimant's own testimony.  *Myers*, 721 F.3d at 525; *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005); *see also Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

In this case, there is substantial evidence that supports the ALJ's decision to discount Dr. Conaway's opinion that Brashier is limited to sedentary work.  In particular, Brashier testified that he is able to work, regularly looking for work, and that the only reason he is not working is that he cannot find a steady job.  [Tr. 37, 41].  Brashier further testified that he can lift up to twenty pounds and can walk up to two miles at a time.  [Tr. 41-42].  This is consistent with his treatment records, which show that less than two weeks after his August 2009 heart attack he reported walking for one to one and a half hours per day without any symptoms of angina or shortness of breath.  [Tr. 326].  Furthermore, Brashier continued to work after his heart attack, including jobs that involved moving mattresses, stripping insulation off of warehouse walls, and construction on houses.  [Tr. 36, 318].  Brashier also testified that he is able to jog, run, play basketball, shop for groceries, do his own laundry at a location about a mile and a half from his apartment, take the bus regularly, perform household chores, prepare meals, and care for himself without assistance.  [Tr. 33, 42-44].  Despite these activities, Brashier's treatment notes show that he repeatedly denied experiencing any symptoms related to his heart condition, [265, 276, 294, 342], with the exception of one incident that was likely

5

exacerbated by heavy alcohol use, [Tr. 302]. The ALJ relied on this evidence in making specific findings as to the various requirements of light work. *See* [Tr. 18-19].

There is thus substantial evidence that supports the ALJ's determination that Brashier is capable of performing light work, with the additional restrictions set forth by the ALJ, and attendant decision to discount Dr. Conaway's opinion. Brashier argues that the ALJ erred by crediting his testimony because he has limited insight into his heart condition, but there is no objective evidence in the record that supports this conclusion. In fact, Brashier's treatment notes consistently document his mental status as alert and oriented with no abnormal findings, *e.g.*, [Tr. 324], and during the administrative hearing Brashier denied ever feeling confused or experiencing other mental difficulties, [Tr. 51]. Consequently, the ALJ did not err by relying on Brashier's testimony in formulating Brashier's residual functional capacity. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including . . . an individual's own description of his limitations.").

Finally, Brashier argues that remand is necessary based on the fact that he was subsequently determined to be disabled as of March 2013. Yet, Brashier has not attempted to explain how this later finding undermines the ALJ's decision, which was issued over a year prior on February 8, 2012 and concerned an alleged disability onset date of August 17, 2009. Without any further elaboration or discussion of the evidentiary basis for the award of benefits in 2013, the subsequent, favorable determination does not, on its own, compel remand. *See, e.g.*, *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009) (holding that a subsequent award of benefits does not require remand

6

absent some showing as to "what evidence supported [the later] decision," because "[t]he new determination might be based on a change in the claimant's condition that occurred after the initial determination or a change in the claimant's circumstances, such as entering a new age classification."); *Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 965 (D. Minn. 2010) ("[W]e cannot say that the subsequent award of benefits is, in and of itself, a ground for remand, since the Plaintiff has not articulated, nor is it apparent, whether that decision would undermine any previous decision, since it may actually relate to a deterioration in her condition, or to some other intervening cause."); *see also Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (holding that a subsequent award of benefits was not inconsistent with an earlier denial of benefits where the later decision "involved different medical evidence, a different time period, and a different age classification.").

## III. Conclusion

For the reasons set forth above, the decision of the ALJ is AFFIRMED.

/s Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 19, 2014
Jefferson City, Missouri